I'm clerk I believe we have one more scheduled argument we do your honor case number two four dash two eight three one from the Western District of Missouri United States versus Alonzo Miller Miss Curtis when you're prepared please proceed may it please the court mr. Miller argues that the officers in this case did not have reasonable suspicion to further detain him for an additional investigation beyond the traffic violations that they had stopped him for he also contends that they did not have grounds to conduct a frisk of his person because they had no reasonable suspicion that criminal activity was afoot nor did they have any reasonable belief that he was armed and dangerous in fact the officer who frisked mr. Miller officer Justin can be heard on the dash cam of his patrol vehicle saying I had no idea he had a gun on him after this shooting occurred and things had settled down the officers went to police headquarters to but that would be that statement that would go to a subjective belief wouldn't it that's the best argument the government can come up with and so here if you look objectively you've got this got the circumstances as far as time of day and location and you've also you got this this comment of mr. Miller that in answer to a question when he was in the vehicle that there was something under the seat or referring to something under the seat wouldn't that be significant objective basis formed a significant objective basis or what happened not the last factor that you mentioned about something being up under the seat so I think you have to figure out at what point do they switch investigations from the traffic stops to these other possible crimes and I say it occurs when they're in their patrol car after they've already interviewed mr. Miller and the passenger at that point they should have written him a traffic ticket and let him go because they didn't have any reasonable suspicion for other crimes what they had was he's on parole he's driving a truck owned by someone else but they ran the VIN nothing came back suspicious on that he supposedly is nervous but if you watch that video I think you'll see he's pretty calm pretty collected he's forthright in his answers you have him dropping cigarette ash on his clothing not unusual he was reaching for his driver's license and the cigarettes bobbing up and down in his mouth as he speaks to the officers the location where he's coming from I think that's probably the best factor for the government because the officers say we know this location and there's a guy there he goes by the initials a D and he's been selling drugs out of there but then they say you know I don't know if he's still selling there at what point do they ask for permission to search his vehicle so at the end of all this sitting in the patrol car they say well let's go see if he'll consent I want to get a look around in that car and so they go back and they get consent and then he steps out so in my mind now they're launched onto a new investigation so you're saying they were prohibited from requesting consent yes yes now that I'll admit argument is a bit tough for me given current case law and I think what's developing here is an intra circuit split that we kind of need to talk about and resolve and I would ask the court to compare United States versus Allen 43 F 4th 901 that is cited in my brief with a case that came down a couple months ago one that I argued United States versus Billy Puckett that's not my brief because the brief was written earlier 139 F 4th 730 738 had no date Allen says suspects cars parked on sidewalk clear violation they get to write him a ticket they go on though and they start investigating some other stuff the court said he the officer had gathered all the evidence he needed to prosecute the unlawful parking violation the only remaining traffic related checks would be check the car's license and registration the passengers run their criminal histories and then write a citation here's the important part by proceeding with a search instead of completing the investigation in citation officer Holton extended the traffic stop beyond the time necessary to complete the stops mission compare that to Puckett traffic stop for having a placard hanging from a rearview mirror all of that evidence collected as soon as he sees that placard because you're not allowed to have that up while you're driving he ran computer checks the driver came back his license was valid there's no other reason to hold him the court said when the computer checks have been completed in the trooper knew the defendant's license was valid he had not yet issued him a warning or citation for the traffic infractions that's at that time the traffic stops purpose remained incomplete and it was permissible to ask questions unrelated to those in traffic infractions and seek consent to search the defendant's truck so the thing I want what I think is important to resolve for this circuit is the question is not whether the officer finished writing a traffic citation and if not he can then go pursue unrelated investigations even if they're not supported by reasonable suspicion or and this is my position the question is whether the officer starts investigating a crime other than the traffic infraction without independent reasonable suspicion instead of I think the words instead of are important instead of completing the mission of the stop and writing the citation in Rodriguez the United States Supreme Court case at page 357 it says the critical question is not whether the other investigation occurs before or after the citation issues but whether conducting the investigation prolongs the stop so let's say you know you have your traffic violations you're going to move on because you want to see what's in the car and you go ask for consent and that takes 30 seconds or so until the guy agrees to give consent then you do your search you have added time to the stop you've added the 30 seconds and you haven't started writing the citation so if it takes you three minutes to write a citation you've added added 30 seconds to the stop if you look at an older case and I don't have the site on this one I'm sorry Sal kill sal KIL you have two officers working at the same time one officer branches off on a separate wholly unrelated investigation that he doesn't have reasonable suspicion for but the other officer continues to work on the traffic citation is writing them out there's no addition of time because it's occurring concurrently so here I'm saying once they're sitting there they're done talking to the passenger and the driver they're sitting in their patrol car they've gone through all of these various things that they think are suspicious but aren't really coming up with something let's go get consent let's see what's in that vehicle they should have started writing the citations at that point everything past that point is adding time to what what legitimately could have been the stop now they're moving on to unrelated things they don't have the power to do that now the things that they consider let's go back to the question of what wasn't that just the off I'm gonna go ahead and let my time run let's let's say well that was just the officer subjective opinion when he says I had no idea there was a gun all of the factors that we've already talked about the cigarette ash the the late night it's cold out the woman could possibly be a prostitute none of that supports either one of those people having a gun there's nothing gun related in any of these factors what what's the and I think this was touched a little earlier when the officer asked you have anything illegal in the truck and he says well under the front seat and I'm saying it ended before that they're in the car they're going out to now get consent that's when the clock starts running on this second independent investigation that is not supported by reasonable suspicion so and so that also includes when mr. Miller gets out of the car and the officer says we had this strange way of getting out he went to my right instead of going to my left then he said something about under the seat and then he kind of tensed up all of those factors are related to this second invest investigation that has nothing to do with the traffic infractions those cannot supply reasonable suspicion so are you are you contending that the the question the question that was asked of whether can I search your vehicle that's what extended the stop yes and how long did that question take I don't know probably a matter of seconds but Rodriguez got rid of the de minimis rule there it doesn't matter whether it's five seconds ten twenty six seconds if you've added time and Rodriguez even says if you have measurably added time well it's surely surely when the officer goes back to the he can say something without extending the stop even if it's we've checked everything out and drive carefully and go on your way so how what that's what conceivable way was the stop extended by asking the question that's those are all fair comments because they're related to the original purpose of the stop the traffic infraction you're telling the guy he's free to go I'm gonna write out your ticket here here's that you're at your thought you were talking about time extension in time it's the combination of adding time while pursuing a secondary investigation that you don't have independent reasonable suspicion for if all you're doing our activities providing information related to the traffic infraction you're okay but if you're going to deviate from the purpose of your stop you have to have fresh independent reasonable suspicion I'm way over on my time thank you thank you miss curse mr. Davids may it please the court my name is Justin Davids I am an assistant US district of Missouri and I represent the United States of America good morning first I want to thank the court for the opportunity to speak at Fourth Amendment Day here and I will hopefully contribute well to that one of the things that has sort of took me by surprise in the appellant's initial argument is their claim that that they that the triggering of when the stop could be deemed unreasonably prolonged is once they had finished up running the background the criminal check in the car I have interpreted to be the the whether there was anything illegal in the vehicle now the the appellant seems to be saying well that isn't the trigger it was the fact that the computer check was done and nothing really came back so their choices were to either write the ticket or or not write the ticket and so do you read Rodriguez different than well I I read Rodriguez to say that officers can continue with the traffic stop with all acts related to the initial traffic stop unless they develop reasonable suspicion of other crimes and then they can can also investigate those but here this really isn't even a close call we have reasonable suspicion the the thing that I think would trigger on its own reasonable suspicion is when they when they confronted the defendant with the fact that the tags were expired on the vehicle and the headlight was broken and the defendant acknowledges that it's not his vehicle but that gave them reasonable suspicion to investigate further they can investigate whether this is a stolen vehicle they you know they they could ask him questions related to that I think the question of is there anything illegal or anything I need to know about relates directly to that question we cited in our brief USV Sanchez where you send you the stop wasn't the only investigation underway once when I say the stop I mean the traffic once they asked him this question I mean I think this is like a lot of traffic stops that there are certain questions that officers can ask as a matter of course but during this traffic stop additional reasonable suspicion may develop as to other crimes right and so USV Sanchez is a reasonable officer can find it suspicious that a car owner would lend their vehicle to someone in that case that was uninsured here the defendant didn't have proof of insurance but also it was even more so that like in Sanchez the car's tags license was was expired and it was a reasonable officer could could find it suspicious that someone would lend a car to someone with expired tags so I think that fact on its own would support further investigation I think once you add in the additional facts the the location that this took place in the time of day it was 1230 at night it was it was a cold January night the passenger wasn't really dressed for that type of night there was you know the appellant makes some some suggestion that the video evidence contradicts this but the the court heard from both officers at an evidentiary hearing they saw the video the court made a credibility determination and it agreed that it gave credit to the officers testimony about the defendant appearing nervous and having dilated eyes so as far as reasonable suspicion this just isn't even a close a close case if we're going to the to say though if we're not going to really challenge that but say oh it was the question of consent that unreasonably prolonged the stop I don't believe the case law supports that right an officer can can stop anyone on this on the street even without reasonable suspicion they can talk to anybody and they can ask consent to that doesn't violate the Fourth Amendment and once a person gives consent that person is necessarily consenting to an extension of the stop so in this case the officer could could ask even taking even assuming the premise that the appellant suggests here the officer could ask for consent and that does not unreasonably prolonged stop I don't believe that there's any case law that says that that question unreasonably prolonged stop and obviously when the defendant gives consent he's agreeing to extend the stop so one other point I would make and this goes to both reasonable suspicion and to the need to conduct a pat-down is when they ran the background check they found out that the defendant was on parole for for second-degree assault and for a gun related charge which I am assumed assuming was armed criminal action that based on my this occurring in Missouri but at that point I think that puts officers on notice that there's a potential weapon here or something that could harm them when they go to ask him to step out of the vehicle and if there's anything illegal and he doesn't respond he's really non-responsive he doesn't say yes he doesn't say no he just says check under the seat there's something under the seat I think that gives them the ability to pat the defendant down for dangerous weapons and your honor you're correct that it's this is an objective standard not a subjective so really doesn't matter if the officer had said I had no idea he had a gun that's not the same as saying I didn't believe he had a gun that's not the same as saying I didn't believe he had any dangerous weapons on him and it's frankly irrelevant so those those facts all support the district court's decision here to touch one more thing on Rodriguez and that is it there are under Rodriguez there are certain questions that an officer can always ask right yeah they can ask you for your ID you can ask for where a person is coming from where they're going to the officer has to have no reasonable suspicion for that it doesn't have to be tied specifically to the reason for the traffic stop right of course they can ask questions related to the traffic stop violation Rodriguez allows that because you've already had presumably reasonable suspicion to conduct a traffic stop but there are two other things two other categories of questions that you don't have to have reasonable suspicion for to ask and those are questions that go to officer safety and those go are questions that go to highway safety like public safety of the highways right and so I I realize now that that this appears not to be what the the appellant's arguments are turning on but I suggest that a question that the question is there anything illegal in the vehicle and anything I need to know about goes to both officer safety and public safety of the highways and that they didn't even need reasonable suspicion to reach that question but that was part of the traffic stop it goes to get it goes to making sure that the officers are safe while conducting the traffic stop it frankly you know given that the car is is unlicensed and has a broken headlight it goes to you know whether there's anything like intoxicating beverages or or anything in the vehicle that might make it unsafe to operate on the highway and so I'm reasonable suspicion wasn't even needed to ask that question seeing my time is up if there are no further questions the government respectfully requests that this court affirm the thank you I see no thank you mr. David's miss curves give you a minute to wrap up with anything you heard in response please take a look at United States versus gray 213 F third nine nine eight very similar facts here but the point there is it was a consensual encounter between the officer and the person they're questioning and he gives answers that they find suspicious they do a pat down and find a gun in a consensual counter the officer safety rationale doesn't exist the officer doesn't have a right to be there the person is just simply talking to them and can walk away at any time he wants to and that's the point of gray and it's also the point and this part is quoted at length in my brief in the concurring opinion of Justice Harlan in Terry versus Ohio the officer has to have the right to be there in order to have officer safety protection I'm not summarizing that very well it's articulated much better by Justice Harlan but gray and that concurring opinion I think will respond to that argument by the government thank you miss curves thank you thank you also mr. David support appreciates both counsel's participation in argument before the court this morning we'll continue to study the matter render decision in due course thank you madam clerk I believe that concludes our scheduled arguments yes it does your honor all right court will be in recess until tomorrow morning at 9 a.m.